**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| KERRITT D. THOMPSON and KECIA DUHART THOMPSON, individually and on behalf of all others similarly situated, | Civil Action No. |
| Plaintiffs, | **CLASS ACTION COMPLAINT** |
| v. | **JURY TRIAL DEMANDED** |
| BETHPAGE FEDERAL CREDIT UNION and CU SETTLEMENT, LLC, | |
| Defendants. | |

Plaintiffs Kerritt D. Thompson and Kecia Duhart Thompson (collectively "Plaintiffs" or "Thompsons"), by and through their undersigned attorneys, bring this action on behalf of themselves and all others similarly situated against defendants Bethpage Federal Credit Union ("Bethpage") and CU Settlement, LLC ("CU Settlement," collectively with Bethpage "Defendants"), for violations of the Real Estate Settlement Procedures Act ("RESPA"). Plaintiffs allege upon personal knowledge as to themselves, and upon information and belief as to all other matters, based upon the investigation made by and through their attorneys, as follows:

**SUMMARY OF ACTION**

1.      Defendants have disregarded and violated clear provisions of RESPA that seek to prevent improper kickbacks and unearned fees in the market for real estate settlement services.

2.      Plaintiffs bring this action on behalf of themselves and other purchasers of property obtained through a federally related mortgage loan from Bethpage that (i) were required by Bethpage to use its affiliate, CU Settlement, for settlement services as a precondition of the

closing of the transaction; and/or (ii) were provided an improperly modified Affiliated Business Arrangement Disclosure Statement Notice ("ABA Statement") as described herein (the "Class").

3.     These actions by Defendants violate RESPA's prohibition on improper affiliated business arrangements, and subject Defendants to penalties under 12 U.S.C. § 2607(d).

4.     On behalf of themselves and the other members of the Class, Plaintiffs seek monetary, declaratory and injunctive relief from Defendants for their violations of RESPA, including a reimbursement of three times the amount charged by CU Settlement for settlement services.

## PARTIES

5.     Plaintiffs Kerritt D. Thompson and Kecia Duhart Thompson are residents of Queens, New York.  On November 15, 2016, Plaintiffs closed on their purchase of a co-op apartment funded by a federally related mortgage loan from Defendant Bethpage.

6.     Defendant Bethpage is a federal credit union chartered in 1941.  Bethpage's principal place of business is 899 S. Oyster Bay Road, Bethpage, NY 11714.

7.     Defendant CU Settlement LLC is a limited liability corporation providing settlement services organized under the laws of the State of New York.  CU Settlement's principal place of business is 501 Broadhollow Road, Suite 207, Melville, New York 11747. Bethpage has a 51% ownership interest in CU Settlement.

## JURISDICTION AND VENUE

8.     This Court has subject matter jurisdiction over Plaintiffs' claims pursuant to 28 U.S.C. § 1331 and 12 U.S.C. § 2614.

9.      Venue is proper in the Eastern District of New York pursuant to 28 U.S.C. § 1391(b) because Defendants reside in this District and a substantial part of the events giving rise to the claims occurred in this District.

10.      This Court has personal jurisdiction over Defendants because, *inter alia*, Defendants are headquartered in this District and regularly transact business in the State of New York.

**FACTUAL ALLEGATIONS**

**I.      RESPA Requirements for Affiliated Business Arrangements**

11.      In 1974, Congress passed RESPA after it found that "significant reforms in the real estate settlement process" were necessary to "insure that consumers throughout the Nation are provided with greater and more timely information on the nature and costs of the settlement process and are protected from unnecessarily high settlement charges caused by certain abusive practices that have developed in some areas of the country."  12 U.S.C. § 2601.  RESPA regulates, among other things, various aspects of the issuance of federally related mortgage loans.  *See* 12 C.F.R. § 1024.5(a).

12.      In 2011, 12 C.F.R. § 1024, known as "Regulation X," was enacted which shifted the administration and enforcement of RESPA from the Department of Housing and Urban Development to the Consumer Financial Protection Bureau (the "CFPB").

13.      Relevant to this action is RESPA's regulation of "affiliated business arrangements" under 12 U.S.C. § 2607, whereby consumers are referred by real estate brokers or lenders to an affiliated business of the broker or lender for services relating to the federally related mortgage loan transactions, *i.e.* "settlement services."  Abuses stemming from this practice were a chief concern Congress sought to address in passing RESPA because of the

power brokers and lenders have to influence and control consumers' choice of settlement service

providers.  RESPA's legislative history explains:

> Real estate professionals, such as real estate brokers or lenders, are in a unique position to influence or control a consumer's decision regarding the selection of various settlement service providers, such as hazard insurance agents, title insurance agents, mortgage insurers of escrow agents.  [Affiliated] business arrangements cause concern because the advice of the person making the referral may lose its impartiality and may not be based on his professional evaluation of the quality of service provided if the referrer or his associates have a financial interest in the company being recommended.  In addition, since the real estate industry is structured so that settlement service providers do not compete for a consumer's business directly, but almost exclusively rely on referrals from real estate brokers, lenders or their associates for their business, the growth of [affiliated] business arrangements effectively reduce the kind of healthy competition generated by independent settlement service providers.

H.R. Rep. No. 97-532, 97th Cong., 2nd Sess. at 52.

14.    12 U.S.C. § 2602(7) defines an affiliated business arrangement as, *inter alia*, "an

arrangement in which . . . a person who is in a position to refer business incident to or a part of a

real estate settlement service involving a federally related mortgage loan, or an associate of such

person, has either an affiliate relationship with or a direct or beneficial ownership interest of

more than 1 percent in a provider of settlement services."  Here Bethpage and CU Settlement

have an affiliated business arrangement with respect to the federally related mortgage loan

transactions of Plaintiffs and the Class because Bethpage has a 51% ownership interest in CU

Settlement.  Defendants concede this in the ABA Statement provided to Plaintiffs on the day of

their closing.  *See* Ex. A.  When CU Settlement obtains business through referrals from

Bethpage, Bethpage profits through increased dividends, earnings and/or equity from CU

Settlement.

15.    12 C.F.R. § 1024.15(b) provides that an affiliated business arrangement as

defined by 12 U.S.C. § 2602(7) violates Section 8 of RESPA unless each of the conditions set

forth in 12 C.F.R. § 1024.15(b) are satisfied.

4

16.     One condition is that "[n]o person making a referral has required . . . any person to use any particular provider of settlement services or business incident thereto, *except if such person is a lender*, for requiring a buyer, borrower or seller to pay for the services of *an attorney, credit reporting agency, or real estate appraiser* chosen by the lender to represent the lender's interest in a real estate transaction."  12 C.F.R. § 1024.15(b)(2)  (emphasis added).  Defendant Bethpage is a lender to Plaintiffs and the Class in the federally related mortgage loan transactions at issue.

17.     A second condition is that "[t]he person making each referral has provided to each person whose business is referred a written disclosure, *in the format* of the [ABA Statement] set forth in Appendix D of this part."  12 C.F.R. § 1024.15(b)(1) (emphasis added)

18.     The mandated language of the Appendix D model ABA Statement provides the following in paragraph B:  "Set forth below is the estimated charge or range of charges for the settlement services of *an attorney, credit reporting agency, or real estate appraiser* that we, as your lender, will require you to use, as a condition of your loan on this property, to represent our interests in the transaction."  12 C.F.R. Part 1024 Appendix D (emphasis added).  Appendix D's "Instructions to Preparer" further clarifies the requirement to "[u]se paragraph B for those referrals to an attorney, credit reporting agency, or real estate appraiser that a lender is requiring a borrower to use to represent the lender's interests in the transaction."

## II.     Defendants' Violation of RESPA

19.     On August 10, 2016, Plaintiffs applied for a federally related mortgage loan with Bethpage.  On November 1, 2016, Bethpage informed Plaintiffs that they had been approved for the federally related mortgage loan and that the closing would occur on November 15, 2016.

20.     On November 9, 2016, Plaintiffs were provided with a closing disclosure statement notifying them that they were required to utilize CU Settlement as a precondition to receive the federally related mortgage loan, but not indicating that CU Settlement was an affiliate of Bethpage.  *See* Ex. B at 2.

21.     On November 15, 2016, the day of the closing, Plaintiffs were provided with an ABA Statement, dated November 14, 2016, notifying them for the first time that Bethpage had a 51% majority ownership interest in CU Settlement.  *See* Ex. A.  The ABA Statement further stated that Plaintiffs were required to use CU Settlement; paragraph B of the ABA Statement provided that "[s]et forth below is the estimated charge or range of charges for the settlement services of an attorney, *settlement agent*, credit reporting agency, or real estate appraiser that we, as your lender, will require you to use, as a condition of your loan on this property, to represent our interest in the transaction," (emphasis added), and noted in the section that CU Settlement was required to be used and that the range of charges would be $225.00-$1,000.00.  *Id.*

22.     Plaintiffs were ultimately charged $950 for a "Settlement/Closing Fee" by CU Settlement.  Upon information and belief, numerous other consumers who obtained federally related mortgage loans from Bethpage were required to use CU Settlement for the closing of their loans, and received the same modified ABA Statement from Bethpage at or just prior to closing.

23.     Defendants' requirement that Plaintiffs and the Class use Bethpage's affiliate CU Settlement as a precondition of the closing of the federally related mortgage loan transaction violates 12 C.F.R. § 1024.15(b)(2) and Section 8 of RESPA, 12 U.S.C. § 2607, because CU is not an affiliate "attorney, credit reporting agency, or real estate appraiser" that Bethpage is permitted to require Plaintiffs and the Class to utilize.  12 C.F.R. § 1024.15(b)(2).

24.     Defendants have further violated Section 8 of RESPA through their misleading modification to the required format of the ABA Statement.  Appendix D of Regulation X requires that paragraph B of the ABA Statement notify borrowers of any "attorney, credit reporting agency, or real estate appraiser" that a lender requires the borrower to pay to represent the lender's interest in the transaction as a condition of the federally related mortgage loan.

25.     In an effort to circumvent the clear requirements of 12 C.F.R. § 1024.15(b), Defendants have added a fourth entity, "settlement agent" to the list of affiliates, "attorney, credit reporting agency, or real estate appraiser," that lenders are permitted to require borrowers to use. *See* Ex. A.  This is a violation of 12 C.F.R. § 1024.15(b)(1), which requires that borrowers be provided an ABA Statement " in the format . . . set forth in Appendix D," which does not include affiliate "settlement agents" as providers of settlement services that lenders can require borrowers to utilize.

26.     Moreover, regardless of whether CU Settlement can properly be considered a "settlement agent," Defendants' manipulation of Appendix D's form ABA Statement is a blatant attempt to mislead Plaintiffs and the Class as to the type of affiliated business arrangements that RESPA and the CFPB permit, and defeats the very purpose of the ABA Statement mandated by RESPA Section 8, 12 U.S.C. §2607.  *See* H.R. Rep. No. 97-532, 97th Cong., 2nd Sess. at 52. Defendants' adulterated ABA Statement facilitates the involuntary steering of consumers to Bethpage's affiliate CU Settlement by falsely implying that Bethpage is within its rights to require the use of an affiliate "settlement agent" like CU Settlement as a precondition for a federally related mortgage loan.

## CLASS ACTION ALLEGATIONS

27.     Plaintiffs bring this action as a class action pursuant to Federal Rules of Civil

Procedure 23(a), (b)(2) and (b)(3), on behalf of the following class:

> all purchasers of property obtained through a federally related mortgage loan from
> Bethpage since February 16, 2016 that (i) were required by Bethpage to use CU
> Settlement for settlement services; and/or (ii) were provided the improperly
> modified version of the ABA Statement described herein (the "Class").

28.     Excluded from the Class are:  Defendants; any person, firm, trust, corporation,

officer, director, or other individual or entity in which Defendants have a controlling interest or

which is related to or affiliated with Defendants; and the legal representatives, agents, affiliates,

heirs, successors-in-interest, or assigns of each such excluded party.

29.     This action is properly maintainable as a class action because, *inter alia*:

> (a)     The Class is so numerous and geographically dispersed that joinder of all
> members is impracticable.  While the exact number of members of the
> Class is unknown to Plaintiffs at this time and will be ascertained through
> appropriate discovery, upon information and belief the Class contains
> hundreds of members.  Members of the Class may be identified from
> records maintained by Defendants, and may be notified of the pendency of
> this action by mail, e-mail, or other electronic means;

> (b)     Plaintiffs' claims are typical of the claims of the other members of the
> Class, and Plaintiffs do not have any interests adverse to the Class;

> (c)     Plaintiffs are adequate representatives of the Class, have retained
> competent counsel experienced in litigation of this nature, and will fairly
> and adequately protect the interests of the Class;

> (d)     This action is appropriate as a class action pursuant to Fed. R. Civ. P.
> 23(a)(2) because common questions of law and fact exist as to all
> members of the Class and predominate over those questions affecting only
> individual members.  These common questions include, *inter alia*:

>> i.     Whether Defendants violated RESPA by requiring Plaintiffs and
>> the Class to use the settlement services of Bethpage's affiliate CU
>> Settlement as a precondition to the closing of the federally related
>> mortgage loan transaction;

      ii.      Whether Defendants violated RESPA by providing Plaintiffs and members of the Class the improperly modified ABA Statement discussed herein; and

      iii.     The appropriate measure of damages owed to Plaintiffs by Defendants;

(e)    This action is maintainable as a class action under Fed. R. Civ. P. 23(b)(2) because Defendants have acted or refused to act on grounds that apply generally to the Class, so that the relief sought is appropriate respecting the Class as a whole;

(f)    Class certification is also appropriate under Fed. R. Civ. P. 23(b)(3) because questions of law and fact common to the Class predominate over any questions affecting only individual members of the Class, and because a class action is superior to other available methods for fair and efficient adjudication of this controversy.  Defendants' conduct as described herein stems from common and uniform policies and practices, resulting in damages to the Class that are readily calculable from the Defendants' records and other class-wide evidence.  Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole;

(g)    A class action is also superior to all other available methods for the fair and efficient adjudication of this controversy because joinder of all members of the Class is impracticable.  The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class, which would, as a practical matter, be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede the ability to protect their interests. Plaintiffs are not aware of any difficulties that are likely to be encountered in the management of this action that would preclude its maintenance as a class action.

**<u>COUNT I</u>**
**(Violation of RESPA)**
**(Against Defendants)**

30.    Plaintiffs repeat and reallege each and every allegation contained above as if fully set forth herein.

31.     Bethpage owns a 51% ownership in CU Settlement. Bethpage was in a position to, and did in the case of the federally related mortgage loan transactions of Plaintiffs and the Class, refer settlement service business to CU Settlement. Accordingly, as Defendants concede in the ABA Statement, Defendants have an affiliated business arrangement with respect to the federally related mortgage loan transactions at issue pursuant to 12 U.S.C. § 2602(7) of RESPA. *See* Ex. A. By nature of this arrangement, when CU Settlement obtains business through referrals by Bethpage, Bethpage profits through increased dividends, earnings and/or equity from CU Settlement.

32.     12 C.F.R. § 1024.15(b) provides that an affiliated business arrangement "is not a violation of section 8 of RESPA (12 U.S.C. § 2607) and of [12 C.F.R.] § 1024.14 if the conditions set forth in this section are satisfied." 12 U.S.C. § 2607 provides for joint and several liability for both a person making an improper referral (here Defendant Bethpage) and the person receiving the referral (here Defendant CU Settlement). Defendants have violated RESPA by failing to satisfy two separate conditions of 12 C.F.R. § 1024.15(b).

33.     12 C.F.R. § 1024.15(b)(2) provides in pertinent part that "[n]o person making a referral has required . . . any person to use any particular provider of settlement services or business incident thereto, except if such person is a lender, for requiring a buyer, borrower or seller to pay for the services of an attorney, credit reporting agency, or real estate appraiser chosen by the lender to represent the lender's interest in a real estate transaction."

34.     Bethpage is a lender to Plaintiffs and the Class in the federally related mortgage loan transactions at issue. *See* Ex. B.at 1. 12 C.F.R. § 1024.2(b) defines a "federally related mortgage loan" as, *inter alia*, "any loan (i) [t]hat is secured by a first or subordinate lien on residential real property . . . [A] []located [in] . . ., a structure or structures designed principally

for occupancy of from one to four families (including individual units of condominiums and cooperatives and including any related interests, such as a share in the cooperative or right to occupancy of the unit." Here, in obtaining their federally related mortgage loan from Bethpage, Plaintiffs granted a security interest in their co-operative unit. *See* Ex. B, at 4.

35.    Bethpage required Plaintiffs and the Class to use the settlement services of its affiliate CU Settlement in federally related mortgage loan closings as a precondition of the transaction being completed. *See* Ex. A.  However, CU Settlement is not "an attorney, credit reporting agency, or real estate appraiser."  Accordingly, Bethpage's requirement that Plaintiffs and the Class use CU Settlement for settlement services violates 12 C.F.R. § 1024.15(b)(2) and Section 8 of RESPA, 12 U.S.C. § 2607.

36.    12 C.F.R. § 1024.15(b)(1) further requires that "[t]he person making each referral has provided to each person whose business is referred a written disclosure, in the format of the [ABA Statement] set forth in Appendix D of this part."

37.    Appendix D's mandated format of the ABA Statement provides the following in paragraph B:  "Set forth below is the estimated charge or range of charges for the settlement services of an attorney, credit reporting agency, or real estate appraiser that we, as your lender, will require you to use, as a condition of your loan on this property, to represent our interests in the transaction."  Appendix D's "Instructions to Preparer" further notifies the preparer to "[u]se paragraph B for those referrals to an attorney, credit reporting agency, or real estate appraiser that a lender is requiring a borrower to use to represent the lender's interests in the transaction."

38.    Despite the clear requirement that an ABA Statement be provided to borrowers in the precise form set forth in Appendix D, Defendants provided Plaintiffs and the Class with an altered ABA Statement which listed CU Settlement as a "settlement agent" in a modified

paragraph B, as follows:  "Set forth below is the estimated charge or range of charges for the settlement services of an attorney, settlement agent, credit reporting agency, or real estate appraiser that we, as your lender, will require you to use, as a condition of your loan on this property, to represent our interests in the transaction."  *See* Ex. A.

39.     Lenders such as Bethpage are not permitted to modify the ABA Statements, especially in a manner that distorts the protections of RESPA.  The modification Defendants made to the ABA Statement inaccurately misinforms consumers like Plaintiffs and the Class of RESPA's protections against improper affiliate arrangements by suggesting that a lender can require a borrower to use its chosen affiliated "settlement agent" or other company such as CU Settlement which is not an attorney, credit reporting agency, or real estate appraiser. Defendants' provision of misleading and incorrect ABA Statements to Plaintiff and the Class violates 12 C.F.R. § 1024.15(b)(2) and Section 8 of RESPA, 12 U.S.C. § 2607.

40.     The penalties for violating Section 8 of RESPA are set forth in 12 C.F.R. § 2607(d) and include recoupment of three times the amount of any charge paid for the settlement service.  *See* 12 C.F.R. § 2607(d)(2).  A court may also award the prevailing party the court costs of the action together with reasonable attorneys' fees.  *See* 12 C.F.R. § 2607(d)(5).

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully pray for judgment as follows:

A.     Determining that this action may properly be maintained as a class action and certifying Plaintiffs as the Class representatives and their counsel as Class Counsel pursuant to Rule 23(a), (b)(3) and (g) of the Federal Rules of Civil Procedure;

B.      Awarding Plaintiffs and the Class statutory damages, including three times the amount of any charge paid for the settlement services at issue, pursuant to 12 U.S.C. §2607(d)(2);

C.      Awarding Plaintiffs and the other members of the Class attorneys' fees and costs pursuant to 12 U.S.C. §2607(d)(5);

D.      Awarding Plaintiffs and the Class declaratory and injunctive relief;

E.      Awarding Plaintiffs and the Class such interest as allowed by law;

F.      Awarding Plaintiffs and the other members of the Class such other and further relief as may be just and proper under the circumstances.

## JURY DEMAND

Plaintiffs hereby demand a trial by jury.

Dated: New York, New York
       February 17, 2017

                           **WOLF HALDENSTEIN ADLER
                           FREEMAN & HERZ LLP**

                           By: _Michael Liskow_____
                           Michael Liskow
                           Correy A. Kamin
                           270 Madison Avenue
                           New York, New York 10016
                           Tel.: (212) 545-4600
                           Fax: (212) 686-0114
                           liskow@whafh.com
                           kamin@whafh.com

                           Alen R. Beerman
                           **ROSEMAN, BEERMAN & BEERMAN LLP**
                           3000 Marcus Ave., Suite #3w6
                           Lake Success, New York 11042
                           Tel.: (516) 327-4600
                           Attorneys@rosenmanbeerman.com

                                    *Attorneys for Plaintiffs*

/791376

# <u>EXHIBIT A</u>

## AFFILIATED BUSINESS ARRANGEMENT DISCLOSURE STATEMENT
## NOTICE

To: **Kerritt D. Thompson and Kecia Duhart Thompson**

Property: **269-10 Grand Central Parkway, 1S Floral Park, New York 11005**

From: **Bethpage Federal Credit Union**
[Entity Making Statement]

Date: **November 14, 2016**

This is to give you notice that **Bethpage Federal Credit Union**
[Referring Party]

has a business relationship with **CU SETTLEMENT, LLC (51% ownership interest)**
[Settlement Services Provider(s)]

(Describe the nature of the relationship between the referring party and the provider(s), including percentage of ownership interest, if applicable.) Because of this relationship, this referral may provide a financial or other benefit to: **Bethpage Federal Credit Union**
[Referring Party]

A.    Set forth below is the estimated charge or range of charges for the settlement services you listed. You are NOT required to use the listed provider(s) as a condition for [    ] settlement of you loan on or [    ] purchase, sale, or refinance of the subject property. THERE ARE FREQUENTLY OTHER SETTLEMENT SERVICE PROVIDERS AVAILABLE WITH SIMILAR SERVICES. YOU ARE FREE TO SHOP AROUND TO DETERMINE THAT YOU ARE RECEIVING THE BEST SERVICES AND THE BEST RATE FOR THESE SERVICES.

| **Provider and Settlement Service** | **Charge or Range of Charges** |
| --- | --- |
| | |
| | |
| | |

B.    Set forth below is the estimated charge or range of charges for the settlement services of an attorney, settlement agent, credit reporting agency, or real estate appraiser that we, as your lender, will require you to use, as a condition of your loan on this property, to represent our interest in the transaction.

| **Provider and Settlement Service** | **Charge or Range of Charges** |
| --- | --- |
| **CU SETTLEMENT, LLC** | **$225.00 - $1000.00** |
| | |
| | |

### ACKNOWLEDGEMENT

I/We have read this disclosure form, and understand tha **Bethpage Federal Credit Union**
[Referring Party]

is referring me/us to purchase the above-described settlement service(s) and may receive a financial or other benefit as the result of this referral.

Signature* Kerritt D. Thompson

Signature  Kecia Duhart Thompson

*(Only one borrower signature required.)

(CU34326.PFD/CU34326/4)

# **<u>EXHIBIT B</u>**

# Closing Disclosure

*This form is a statement of final loan terms and closing costs. Compare this document with your Loan Estimate.*

## Closing Information

| | |
|---|---|
| Date Issued | 11/08/2016 |
| Closing Date | 11/15/2016 |
| Disbursement Date | 11/15/2016 |
| Settlement Agent | CU Settlement |
| File # | ▮ |
| Property | 26910 Grand Central Parkw<br>Floral Park, NY 11005 |
| Sale Price | $310,000.00 |

## Transaction Information

| | |
|---|---|
| Borrower | Kerritt D Thompson<br>Kecia DuHart Thompson<br>146-12 111th Avenue<br>Jamaica, NY 11435 |
| Seller | ▮ |
| Lender | Bethpage Federal Credit Union |

## Loan Information

| | |
|---|---|
| Loan Term | 30 years |
| Purpose | Purchase |
| Product | Fixed Rate |
| Loan Type | ☒ Conventional ☐ FHA<br>☐ VA ☐ _____ |
| Loan ID # | ▮ |
| MIC # | 1d |

## Loan Terms

| | | Can this amount increase after closing? |
|---|---|---|
| **Loan Amount** | $248,000 | NO |
| **Interest Rate** | 3.375% | NO |
| **Monthly Principal & Interest**<br>*See Projected Payments below for your Estimated Total Monthly Payment* | $1,096.40 | NO |
| | | **Does the loan have these features?** |
| **Prepayment Penalty** | | NO |
| **Balloon Payment** | | NO |

## Projected Payments

| Payment Calculation | Years 1-30 |
|---|---|
| Principal & Interest | $1,096 .40 |
| Mortgage Insurance | +          0 |
| Estimated Escrow<br>*Amount can increase over time* | +          0 |
| **Estimated Total Monthly Payment** | **$1,096.40** |

| Estimated Taxes, Insurance & Assessments<br><br>*Amount can increase over time*<br><br>*See page 4 for details* | $1,602.43<br>a month | **This estimate includes** | **In escrow?** |
|---|---|---|---|
| | | ☐ Property Taxes | |
| | | ☒ Homeowner's Insurance | NO |
| | | ☒ Other: HOA Dues | NO |
| | | *See Escrow Account on page 4 for details. You must pay for other property costs separately.* | |

## Costs at Closing

| | | |
|---|---|---|
| **Closing Costs** | $10,491.62 | Includes $5,480.72 in Loan Costs + $5,010.90 in Other Costs - $0.00 in Lender Credits. *See page 2 for details.* |
| **Cash to Close** | $62,850.62 | Includes Closing Costs. *See Calculating Cash to Close on page 3 for details.* |

## Closing Cost Details

| Loan Costs | | Borrower-Paid | | Seller-Paid | | Paid by Others |
|---|---|---|---|---|---|---|
| | | At Closing | Before Closing | At Closing | Before Closing | |
| **A. Origination Charges** | | **$2,535.00** | | | | |
| 01 0.75% of Loan Amount (Points) | | $1,860.00 | | | | |
| 02 Document Review Fee | | $25.00 | | | | |
| 03 Processing Fee | | $350.00 | | | | |
| 04 Underwriting Fee | | $300.00 | | | | |
| 05 | | | | | | |
| 06 | | | | | | |
| 07 | | | | | | |
| 08 | | | | | | |
| **B. Services Borrower Did Not Shop For** | | **$1,389.00** | | | | |
| 01 Appraisal Fee | to LAURITANO APPRAISAL SERVICES, INC | | $400.00 | | | |
| 02 FedEx Fee | to CU Settlement, LLC | $33.00 | | | | |
| 03 Flood Certificate Fee | to LPS Flood | $6.00 | | | | |
| 04 Settlement/Closing Fee | to CU Settlement, LLC | $950.00 | | | | |
| 05 | | | | | | |
| 06 | | | | | | |
| 07 | | | | | | |
| 08 | | | | | | |
| **C. Services Borrower Did Shop For** | | **$1,556.72** | | | | |
| 01 Title - Abs/Title/Lien Search | to All County Abstract, Inc | $646.72 | | | | |
| 02 Title - Endorsements | to All County Abstract, Inc | $75.00 | | | | |
| 03 Title - Insurance Lender | to All County Abstract, Inc | $835.00 | | | | |
| 04 | | | | | | |
| 05 | | | | | | |
| 06 | | | | | | |
| 07 | | | | | | |
| **D. TOTAL LOAN COSTS (Borrower-Paid)** | | **$5,480.72** | | | | |
| Loan Costs Subtotals (A + B + C) | | $5,080.72 | $400.00 | | | |

| Other Costs | | Borrower-Paid | | Seller-Paid | | Paid by Others |
|---|---|---|---|---|---|---|
| **E. Taxes and Other Government Fees** | | **$65.00** | | | | |
| 01 Recording Fees | Deed:       Mortgage: | | $65.00 | | | |
| 02 City Tax/Stamps | to Queens | | | $3,100.00 | | |
| 03 Transfer Tax | | | | $1,240.00 | | |
| **F. Prepaids** | | **$366.90** | | | | |
| 01 Homeowner's Insurance Premium (   mo.) | | | | | | |
| 02 Mortgage Insurance Premium (   mo.) | | | | | | |
| 03 Prepaid Interest ($22.93 per day from 11/15/16 to 12/01/16) | | $366.90 | | | | |
| 04 Property Taxes (   mo.) | | | | | | |
| 05 | | | | | | |
| **G. Initial Escrow Payment at Closing** | | | | | | |
| 01 Homeowner's Insurance | per month      for      mo. | | | | | |
| 02 Mortgage Insurance | per month      for      mo. | | | | | |
| 03 Property Taxes | per month      for      mo. | | | | | |
| 04 | | | | | | |
| 05 | | | | | | |
| 06 | | | | | | |
| 07 | | | | | | |
| 08 Aggregate Adjustment | | | | | | |
| **H. Other** | | **$4,579.00** | | | | |
| 01 Admin Fee | to Charles H Greenthal Managem | $500.00 | | | | |
| 02 Commissions Paid at Closing | to toMagic of Great Neck Realty | | | $12,400.00 | | |
| 03 Commissions Paid at Closing | to Charles H Greenthal Property | | | $3,100.00 | | |
| 04 Coop Attorney Legal Fee | to Coop Attorney | $250.00 | | $875.00 | | |
| 05 Flip Tax | to Charles H Greenthal Managem | $3,100.00 | | $3,100.00 | | |
| 06 Non Refundable Move Out | to Charles H Greenthal Managem | $100.00 | | $100.00 | | |
| 07 NYS Stock Transfer Fee | to Coop Attorney | | | $137.80 | | |
| 08 Processing Fee | to Coop Attorney | $100.00 | | | | |
| 09 Refundable Move Out | to Charles H Greenthal Managem | | | $1,000.00 | | |
| 10 Title - Insurance Owners | to All County Abstract, Inc | $529.00 | | | | |
| **I. TOTAL OTHER COSTS (Borrower-Paid)** | | **$5,010.90** | | | | |
| Other Costs Subtotals (E + F + G + H) | | $4,945.90 | $65.00 | | | |
| **J. TOTAL CLOSING COSTS (Borrower-Paid)** | | **$10,491.62** | | | | |
| Closing Costs Subtotals (D + I) | | $10,026.62 | $465.00 | $25,052.80 | | |
| Lender Credits | | | | | | |

## Calculating Cash to Close

Use this table to see what has changed from your Loan Estimate.

| | Loan Estimate | Final | Did this change? |
|---|---|---|---|
| Total Closing Costs (J) | $12,687.00 | $10,491.62 | YES | • See **Total Loan Costs (D)** and **Total Other Costs (I)** |
| Closing Costs Paid Before Closing | $0 | − $465.00 | YES | • You paid these Closing Costs **before closing** |
| Closing Costs Financed (Paid from your Loan Amount) | $0 | $0 | NO | |
| Down Payment/Funds from Borrower | $62,000.00 | $62,000.00 | NO | |
| Deposit | $0 | − $10,000.00 | YES | • You **increased** this payment. See Deposit in **Section L** |
| Funds for Borrower | $0 | $0 | NO | |
| Seller Credits | − $4,543.00 | $0 | YES | • See Seller Credits in **Section L** |
| Adjustments and Other Credits | $0 | $824.00 | YES | • See details in **Sections K and L** |
| **Cash to Close** | $70,144.00 | $62,850.62 | | |

## Summaries of Transactions

Use this table to see a summary of your transaction.

| BORROWER'S TRANSACTION | | SELLER'S TRANSACTION | |
|---|---|---|---|
| **K. Due from Borrower at Closing** | **$320,850.62** | **M. Due to Seller at Closing** | **$310,824.00** |
| 01 Sale Price of Property | $310,000.00 | 01 Sale Price of Property | $310,000.00 |
| 02 Sale Price of Any Personal Property Included in Sale | | 02 Sale Price of Any Personal Property Included in Sale | |
| 03 Closing Costs Paid at Closing (J) | $10,026.62 | 03 | |
| 04 | | 04 | |
| **Adjustments** | | 05 | |
| 05 | | 06 | |
| 06 | | 07 | |
| 07 | | 08 | |
| **Adjustments for Items Paid by Seller in Advance** | | **Adjustments for Items Paid by Seller in Advance** | |
| 08 City/Town Taxes     to | | 09 City/Town Taxes     to | |
| 09 County Taxes     to | | 10 County Taxes     to | |
| 10 Assessments     to | | 11 Assessments     to | |
| 11 Maintenance 11/15/16 to 11/30/16 | $824.00 | 12 Maintenance 11/15/16 to 11/30/16 | $824.00 |
| 12 | | 13 | |
| 13 | | 14 | |
| 14 | | 15 | |
| 15 | | 16 | |
| **L. Paid Already by or on Behalf of Borrower at Closing** | **$258,000.00** | **N. Due from Seller at Closing** | **$25,052.80** |
| 01 Deposit | $10,000.00 | 01 Excess Deposit | |
| 02 Loan Amount | $248,000.00 | 02 Closing Costs Paid at Closing (J) | $25,052.80 |
| 03 Existing Loan(s) Assumed or Taken Subject to | | 03 Existing Loan(s) Assumed or Taken Subject to | |
| 04 | | 04 Payoff of First Mortgage Loan | |
| 05 Seller Credit | | 05 Payoff of Second Mortgage Loan | |
| **Other Credits** | | 06 | |
| 06 | | 07 | |
| 07 | | 08 Seller Credit | |
| **Adjustments** | | 09 | |
| 08 | | 10 | |
| 09 | | 11 | |
| 10 | | 12 | |
| 11 | | 13 | |
| **Adjustments for Items Unpaid by Seller** | | **Adjustments for Items Unpaid by Seller** | |
| 12 City/Town Taxes     to | | 14 City/Town Taxes     to | |
| 13 County Taxes     to | | 15 County Taxes     to | |
| 14 Assessments     to | | 16 Assessments     to | |
| 15 | | 17 | |
| 16 | | 18 | |
| 17 | | 19 | |
| **CALCULATION** | | **CALCULATION** | |
| Total Due from Borrower at Closing (K) | $320,850.62 | Total Due to Seller at Closing (M) | $310,824.00 |
| Total Paid Already by or on Behalf of Borrower at Closing (L) | − $258,000.00 | Total Due from Seller at Closing (N) | − $25,052.80 |
| **Cash to Close ☒ From ☐ To Borrower** | **$62,850.62** | **Cash ☐ From ☒ To Seller** | **$285,771.20** |

# Additional Information About This Loan

## Loan Disclosures

### Assumption
If you sell or transfer this property to another person, your lender

☒ will allow, under certain conditions, this person to assume this loan on the original terms.

☐ will not allow assumption of this loan on the original terms.

### Demand Feature
Your loan

☐ has a demand feature, which permits your lender to require early repayment of the loan. You should review your note for details.

☒ does not have a demand feature.

### Late Payment
If your payment is more than *15* days late, your lender will charge a late fee of *2 percent of the Principal and Interest*.

### Negative Amortization (Increase in Loan Amount)
Under your loan terms, you

☐ are scheduled to make monthly payments that do not pay all of the interest due that month. As a result, your loan amount will increase (negatively amortize), and your loan amount will likely become larger than your original loan amount. Increases in your loan amount lower the equity you have in this property.

☐ may have monthly payments that do not pay all of the interest due that month. If you do, your loan amount will increase (negatively amortize), and, as a result, your loan amount may become larger than your original loan amount. Increases in your loan amount lower the equity you have in this property.

☒ do not have a negative amortization feature.

### Partial Payments
Your lender

☐ may accept payments that are less than the full amount due (partial payments) and apply them to your loan.

☒ may hold them in a separate account until you pay the rest of the payment, and then apply the full payment to your loan.

☐ does not accept any partial payments.

If this loan is sold, your new lender may have a different policy.

### Security Interest
You are granting a security interest in
*the real property located at: 26910 Grand Central Parkway Unit 1S , Floral Park, NY 11005*

You may lose this property if you do not make your payments or satisfy other obligations for this loan.

### Escrow Account
*For now, your loan*

☐ will have an escrow account (also called an "impound" or "trust" account) to pay the property costs listed below. Without an escrow account, you would pay them directly, possibly in one or two large payments a year. Your lender may be liable for penalties and interest for failing to make a payment.

| Escrow | | |
|---|---|---|
| Escrowed Property Costs over Year 1 | | Estimated total amount over year 1 for your escrowed property costs: |
| Non-Escrowed Property Costs over Year 1 | | Estimated total amount over year 1 for your non-escrowed property costs: You may have other property costs. |
| Initial Escrow Payment | | A cushion for the escrow account you pay at closing. See Section G on page 2. |
| Monthly Escrow Payment | | The amount included in your total monthly payment. |

☒ will not have an escrow account because ☐ you declined it ☐ your lender does not require or offer one. You must directly pay your property costs, such as taxes and homeowner's insurance. Contact your lender to ask if your loan can have an escrow account.

| No Escrow | | |
|---|---|---|
| Estimated Property Costs over Year 1 | $19,229.16 | Estimated total amount over year 1. You must pay these costs directly, possibly in one or two large payments a year. |
| Escrow Waiver Fee | | |

***In the future,***
Your property costs may change and, as a result, your escrow payment may change. You may be able to cancel your escrow account, but if you do, you must pay your property costs directly. If you fail to pay your property taxes, your state or local government may (1) impose fines and penalties or (2) place a tax lien on this property. If you fail to pay any of your property costs, your lender may (1) add the amounts to your loan balance, (2) add an escrow account to your loan, or (3) require you to pay for property insurance that the lender buys on your behalf, which likely would cost more and provide fewer benefits than what you could buy on your own.

## Loan Calculations

| | |
|---|---|
| **Total of Payments.** Total you will have paid after you make all payments of principal, interest, mortgage insurance, and loan costs, as scheduled. | $400,550.75 |
| **Finance Charge.** The dollar amount the loan will cost you. | $150,563.03 |
| **Amount Financed.** The loan amount available after paying your upfront finance charge. | $244,140.10 |
| **Annual Percentage Rate (APR).** Your costs over the loan term expressed as a rate. This is not your interest rate. | 3.488% |
| **Total Interest Percentage (TIP).** The total amount of interest that you will pay over the loan term as a percentage of your loan amount. | 59.302% |



**Questions?** If you have questions about the loan terms or costs on this form, use the contact information below. To get more information or make a complaint, contact the Consumer Financial Protection Bureau at **www.consumerfinance.gov/mortgage-closing**

## Other Disclosures

**Appraisal**
If the property was appraised for your loan, your lender is required to give you a copy at no additional cost at least 3 days before closing. If you have not yet received it, please contact your lender at the information listed below.

**Contract Details**
See your note and security instrument for information about
- what happens if you fail to make your payments,
- what is a default on the loan,
- situations in which your lender can require early repayment of the loan, and
- the rules for making payments before they are due.

**Liability after Foreclosure**
If your lender forecloses on this property and the foreclosure does not cover the amount of unpaid balance on this loan,

☒ state law may protect you from liability for the unpaid balance. If you refinance or take on any additional debt on this property, you may lose this protection and have to pay any debt remaining even after foreclosure. You may want to consult a lawyer for more information.

☐ state law does not protect you from liability for the unpaid balance.

**Refinance**
Refinancing this loan will depend on your future financial situation, the property value, and market conditions. You may not be able to refinance this loan.

**Tax Deductions**
If you borrow more than this property is worth, the interest on the loan amount above this property's fair market value is not deductible from your federal income taxes. You should consult a tax advisor for more information.

## Contact Information

| | Lender | Mortgage Broker | Real Estate Broker (B) | Real Estate Broker (S) | Settlement Agent |
|---|---|---|---|---|---|
| **Name** | Bethpage Federal Credit Union | | Charles H Greenthal Property Sales Inc | Magic of Great Neck Reality | CU Settlement |
| **Address** | 899 South Oyster Bay Road Bethpage, NY 11714 | | 27260 Grand Central Parkway Floral Park, NY 11005 | 215 Middle Neck Road Great Neck, NY 11023 | 510 Broadhollow Road Suite 207 Melville, NY 11747 |
| **NMLS ID** | 449104 | | | | |
| **NY License ID** | | | 109919928 | 31ZU0406105 | |
| **Contact** | Tara Sacco | | Linda Rappaport | Annette Kroll | Susan Baran |
| **Contact NMLS ID** | 784676 | | | | |
| **Contact NY License ID** | | | 31RA1008518 | 30KR0075205 | REN-TLA-1355199 |
| **Email** | troman@bethpagefcu.com | | jrappaort@greenthal.com | egk22@aol.com | cusettlement@gmail.com |
| **Phone** | (516)417-6721 | | (718)423-3130 | (516)318-4447 | (631)935-1066 |

## Confirm Receipt

By signing, you are only confirming that you have received this form. You do not have to accept this loan because you have signed or received this form.

| | | | |
|---|---|---|---|
| Kerritt D Thompson | Date | Kecia DuHart Thompson | Date |